# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GREGORY THOMPSON,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No.  6:11-cv-1779-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested. Doc. 14.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.     BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on February 5, 2007, alleging an onset of disability on November 30, 2001[1] because of his lumbar and cervical spine impairments.

---

[1] Plaintiff's date of last insured is June 30, 2005 for purposes of a period of disability and disability benefits.

R. 88, 90, 92, 153-55, 198. His application was denied initially and upon reconsideration. R. 98-110. Plaintiff requested a hearing, which was held on May 18, 2009, before Administrative Law Judge Mary Montanus (hereinafter referred to as "ALJ"). R. 31-70. In a decision dated July 31, 2009, the ALJ found Plaintiff disabled from January 17, 2007 through February 20, 2008, but not disabled as defined under the Act between November 30, 2001 and January 16, 2007 and not disabled after February 21, 2008 for ongoing benefits. R. 71-87. Plaintiff timely filed a Request for Review of the unfavorable portions of the ALJ's decision. R. 29.

On June 1, 2011, the Appeals Council granted the request for review and proposed to find Plaintiff's disability had not ended on February 21, 2008 because there was new evidence that supported a finding of lack of significant medical improvement and continuation of disability after February 20, 2008; Plaintiff had required hospitalization on July 27, 2010 for additional orthopedic spinal surgery and he did not medically improve since the early recuperation period from a prior spinal surgery in February 2008. R. 8-9, 148-52. Although Plaintiff objected to the portion affirming the finding of no disability prior to January 17, 2007 (R. 14-15), the Appeals Council adopted its proposed decision, finding Plaintiff has been disabled at all times since January 17, 2007 for ongoing benefits, but not disabled during the earlier period. R. 6-12. Plaintiff filed this action for judicial review on November 8, 2011 essentially challenging the alleged onset date. Doc. 1.

Essentially at issue is only the ALJ's determination (with the Appeals Council's modification) that Plaintiff was disabled as of January 17, 2007, but not before June 30, 2005 (his date of last insured for DIB purposes). As the Commissioner explains, the Social Security Regulations[2] set forth different guidelines for the determination of disability onset date depending on whether a claimant is eligible for SSI or DIB. For the purposes of SSI eligibility, Plaintiff cannot establish that he is

---

[2]SSR 83-20 governs the determination of disability onset date. http://www.ssa.gov/OP_Home/rulings/di/10/-SSR83-20p-di-10.html.

-2-

entitled to an onset date earlier than the protective date of his SSI application[3]. In contrast, in order to be entitled to Title II DIB benefits, Plaintiff must establish that he became disabled on or prior to the expiration of his insured status[4], which in this case is June 30, 2005. Thus, if Plaintiff became disabled after his insured status expired in June 2005 (even if prior to January 17, 2007), then his DIB claim must be denied, despite his disability, and he will only receive SSI from the date his application was filed. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979). Accordingly, to be entitled to DIB benefits Plaintiff must establish that he was disabled prior to June 30, 2005 for the Court to consider an earlier onset date. Plaintiff alleges an onset of disability on November 30, 2001.

### B.   Medical History and Findings Summary

Plaintiff is a high school graduate born in 1965, and was 36 years old at his alleged onset date. R. 35. Plaintiff was 40 years old when his disability insured status expired on June 30, 2005, 44 years old at the time of the ALJ's decision, and 46 years old at the time of the Appeals Council's decision. R. 153, 159. He has a high school education, completed one year of college, and his only past relevant work was as an automobile mechanic for 25 years. R. 37, 59, 202.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff alleges that he became unable to work on November 30, 2001 because of his lumbar and cervical spine impairments. R. 88, 90, 92, 198. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ had found – and the AC adopted the portion of the ALJ's decision – that Plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine and obesity; which for the period of the alleged onset date of November 30, 2001 through the date last insured, June 30, 2005, did not singularly or in combination meet or medically equal one of the

---

[3] Pursuant to SSR 83-20, in SSI claims, onset will be established as of the date of filing (provided the individual was disabled on that date). See SSR 83-20, 1983 WL 31259, at *1, *7 (S.S.A. 1983); see 20 C.F.R. § 416.335.

[4] According to SSR 83-20, a Title II claimant cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition. See SSR 83-20, 1983 WL 31259 at *1 (S.S.A. 1983); see 20 C.F.R. § 416.335.

-3-

impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 7, 80. The ALJ determined (with the AC adopting the finding) that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with exertional and non-exertional limitations. R. 8, 80. Based upon Plaintiff's RFC, the ALJ and AC determined that he could not perform past relevant work. R. 8, 83. Considering Plaintiff's vocational profile and RFC and applying the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 and, based on the testimony of the vocational expert ("VE"), the AC ultimately adopted the ALJ's finding, concluding that Plaintiff could perform work existing in significant numbers in the national economy for the period prior to and including June 30, 2005. R. 8, 83. As described above, the AC modified the ALJ's decision in part, with the end result being that the AC determined that Plaintiff was disabled since January 17, 2007 and was entitled to ongoing benefits (and the disability did not end in 2008 as the ALJ had determined). R. 9-10.

Plaintiff now asserts two points of error. First, he argues that the ALJ failed to properly weigh the medical opinions of his treating physicians and failed to properly determine Plaintiff's onset date under the Social Security Regulations. Second, he contends the ALJ erred by improperly applying the pain standard and in evaluating his credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Assessment of the treating physicians' opinions

Plaintiff claims that the ALJ[5] should have found him disabled prior to January 2007 based on the opinions and the records of his treating physicians. He contends that the ALJ failed to adequately weigh the medical source opinions when considering Plaintiff's residual functional capacity during the period at issue and did not properly consider the directives of the Social Security Regulations. The Commissioner argues that the evidence cited by the ALJ – including the evidence of Plaintiff's strenuous activities from 2005 – belies his statements of a complete inability to perform work-related activity.

Under Social Security Ruling 83-20[6] for disabilities of non-traumatic origin (such as degenerative joint disease, at issue here), "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83–20 at *2. The claimant's alleged onset date forms the "starting point" for the analysis, and "should be used if it is consistent with all the evidence available." *Id*. at *2–*3. The day the claimant stopped working can also be "of great significance." *Id*. at *2. In cases of conflict, however, neither can trump the medical evidence: "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." Id. at *3. When the evidence does not directly establish an onset date, one must be inferred: "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis." *Id.*

---

[5]Because the AC adopted this portion of the ALJ's opinion (with one notable modification), the Court will refer to it as "the ALJ's decision," as discussed *infra*.

[6]1983 WL 31249.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.*

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).

The ALJ must "state with particularity the weight he gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986) (requiring the ALJ to articulate his reasons for "giving no weight to the diagnoses accompanying the test results."). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the court held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, *supra)*. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' " *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)).

Plaintiff argues that the ALJ (and AC) failed to adequately weigh the medical source opinions when considering Plaintiff's residual functional capacity during the period at issue and incorrectly selected the onset date. Plaintiff also contends that the ALJ failed to properly explain the weight given to the medical source opinions from Plaintiff's treating physicians Drs. Umpierre and Walker as they pertain to the period at issue from November 2001 through January 2007. The ALJ claimed that she gave "significant weight" to the opinions from both of these treating sources as expressed in a February 2007 questionnaire from Dr. Walker and a March 2007 questionnaire from Dr. Umpierre

-8-

(R. 82); however, she discounted their opinions of Plaintiff's pre-2007 condition because the ALJ found he had reported to his physicians that he was doing better on medication and had relief from previous surgery.

Plaintiff argues the ALJ erred in rejecting Dr. Umpierre's October 2006 opinion that Plaintiff was unable to work because the ALJ found inconsistent with Plaintiff's symptomatic improvement for the period prior to mid-January 2007, and in placing inordinate weight on Plaintiff's statement to Dr. Goll that he had relief from his surgery in 2001 until January 2007. In contrast, the ALJ gave "significant weight" to the less-than-sedentary residual functional capacity found by Dr. Umpierre in March 2007, to the extent it applied to the period of disability found, and the less-than-sedentary residual functional capacity found by Dr. Walker in February 2007. R. 82. Thus, the ALJ determined (and the AC adopted) Plaintiff's an onset date was of January 17, 2007 based on a "progressive worsening of his symptoms." R. 10, 82.

Plaintiff's medical records indicate that while he was in the Air Force, he had an accident in 1990 or 1991 when he was 22 years old, and he had experienced spinal problems since that time. R. 44, 667. He ended up having three surgeries directly related to his back, including a L5-S1 discectomy from the initial injury in 1990 or 1991; he subsequently had two surgeries on his neck with a plate installed for a fusion that failed. R. 44. He was honorably discharged and retired from the military with at 40% disability rating in 1991. R. 846.

The ALJ's summarized Plaintiff's treatment records for the period before 2005 as:

Records from Dr. Umpierre revealed a history of conservative treatment for the claimant's back syndrome including medication management and injections since 2003. The claimant was also treated by Dr. Walker since 2005 for neck and low back pain, along with numbness in the legs and arms (Exhibit 2F). Dr. Umpierre's records show that the claimant seems fairly stable in late 2004. . . . An MRI from August 2005 revealed *significant degenerative disc disease,* including herniation at L4-5 with mild to moderate bilateral neuroforaminal stenosis and at L5-S1 *a disc protrusion with severe right neuroforaminal encroachment affecting the right S1 nerve root*. On examination at this time mild decreased range of motion was noted. The claimant was

>assessed with status post herniated LS-S1 disc and LS-S1 discectomy with right S1 radiculitis.

R. 82 (emphasis added; internal citation omitted). The ALJ similarly noted, in discussing the severity of Plaintiff's impairments, that the 2005 MRI reported "significant degenerative disc disease" and "at LS-SI a disc protrusion with severe right neuroformanenal encroachment affecting the right Sl nerve root, as well as bulging at C4-S with mild left formainal stenosis." R. 80. Nonetheless, with regard to Plaintiff's RFC, the ALJ determined that from the date of onset of November 30, 2001 through June 30, 2005, Plaintiff had the RFC for sedentary work with a sit stand option and certain exertional limitations on climbing, stooping, fingering with the right arm, and simple steps without intense concentration levels. R. 80-81.

However, the ALJ went on to find that Plaintiff was not disabled prior to 2007 – when he had a recurrence of neck and arm pain that led to additional surgery – because:

>Ongoing treatment records in 2006 and 2007 indicate that the claimant had some flares with activity, such as working on his house, but was fairly stable and was able to go on a camping trip in October 2005, and was generally "doing better with the medication" and was "happy with the results" of the caudal injections. In January 2007 his pain was on a scale of 3-5/10 intermittently, otherwise "no pain." Although Dr. Umpierre indicated in October 2006 that the claimant was unable to work due to failed surgeries this opinion is not consistent with the symptomatic improvement noted in his record for the period prior to mid-January 2007, or with the *claimant's report to Dr. Goll in late 2007 that he had had 100% relief from pain after his surgery in 2001*.

R. 82 (emphasis added).

Plaintiff argues that his comment to Dr. Goll in late 2007 about the "100% relief since the surgery in 2001" relates only to his cervical neck pain and was not a comment at all on his lumbar pain. This argument is clearly borne out by the records from Dr. Umpierre, who Plaintiff saw monthly or bimonthly for an extended period and consistently complained of lumbar pain. R. 238-78, 320-27. In addition, two *lumbar* (as opposed to *cervical*) MRI's done in August and October 2005 – the precise month that the ALJ cited as indicating Plaintiff was not symptomatic because he was on a

-10-

camping trip – indicate "significant degenerative disc disease" and a disc protrusion at L5-S1, with severe right neuroformanenal encroachment affecting the right S1 nerve root. R. 495 (October 2005), 671-73 (August 2005).

Moreover, Dr. Umpierre's record do not consistently indicate Plaintiff had "no pain" as the ALJ cited or that the injections cured his lumbar problems. Several of the injections out of the ten that Plaintiff received relieved his lumbar pain at least initially, but the pain always returned and was usually described as between 6-9/10. Plaintiff began treatment with Dr. Umpierre even before 2003, but Dr. Umpierre changed clinics in 2003, and the previous records were not in the administrative record; Dr. Umpierre commented that he did not have them available at his new clinic. R. 278. In October 2003, Dr. Umpierre noted that Plaintiff had not seen the other doctors at the old clinic or come into see him at the new clinic for three to four months and Plaintiff's pain had gotten worse again in the back and legs, right more than left; with the pain shooting down and associated with numbness in the right toe. R. 282.

With regard to his lumbar pain, he was assessed with a herniated disc at L5-S1 with failed back surgery syndrome, right S1 radiculopathy, and left lumbar radiculitis. R. 278. After going back on the medications in December 2003, Plaintiff reported "doing better" but his pain was still sometimes up to 7/10, and the right leg still hurt, though not as bad with the medication. R. 277. Other reports of his pain levels as "up to 8/10" in January 2004 (R. 276), but improved temporarily in February 2004 after an injection (R. 275) which lasted until May 2004, when he reported that the pain had been getting worse over the last few weeks. R. 272. His pain continued to increase to 6/10 in June 2004 and to 8-9/10 by August 2004. R. 270. The subsequent injection did not work well for the leg and the back was sore to a level of 6/10, with the stress of working around the house because of the hurricane. R. 269. He later reported the "injections were working" but his pain level was still about 8/10 otherwise (R. 267) and he was "stable" with pain level of 7-8/10 at times (R. 264) and

-11-

frequently 7-9/10 as of January 2005. R. 263. During July 2005 he reported that his pain was still 6-8/10 and getting worse in the morning. R. 258. He had another shot at that time and by September 2005, his pain was reduced somewhat to 4-6/10 on average, but his leg had more numbness; MRI's showed he still had a herniation at L4-L5 and at the L5-SI, there was some scarring or annular protrusion with a bulge at L3-4 and also desiccation disc at those last three levels. R. 256, 671.

Plaintiff's back had gotten worse again by October 2005 and the pain was 7-8/10 in intensity with right arm tingling. The MRI showed significant changes at L3-4 where there was bulging anterior endplate spurring and mild central stenosis; disc bulging at L4-5, superimposed posterior central disc herniation with extrusion, and bulging and more focal right posterior central disc protrusion at L5-Sl which causes severe right neuroforaminal encroachment affecting the right S1 nerve root. R. 255, 673. After another injection in December 2005, Plaintiff's pain was reduced but still present at 5-8/10. R. 252. He reported increased pain levels in February 2006 and that the "medications were not working well" and he had flare ups depending on the activity. R. 250-51. Through 2006, he consistently complained of pain and flare-ups, with more severe pain in the morning upon waking, and pain level from 6-9/10 mostly in the back. R. 239-48.

In a letter dated October 24, 2006, Dr. Umpierre stated that he had been treating Plaintiff since April 2003, and he opined that Plaintiff was unable to work as a result of his chronic pain and was permanently disabled. R. 299. Dr. Umpierre noted that Plaintiff had had chronic pain conditions since the late 1980s; he was diagnosed with status-post L5-S1 disc herniation and discectomy, persistent right S1 radiculopathy, epidural scarring with post-laminectomy syndrome, cervical degenerative disc disease, status-post C5-6 fusion with persistent failed surgery syndrome, and cervical radiculitis. R. 299.

On March 5, 2007, Dr. Umpierre subsequently completed a Lumbar Spine Impairment Questionnaire (on a non-SSA form) in which he diagnosed Plaintiff with lumbosacral L5-S1

-12-

discectomy with radiculopathy and post-laminectomy syndrome, epidural scarring, and cervical degenerative disc disease status-post C5-6 fusion with cervical radiculitis. R. 308-14. His handwritten notes indicated Plaintiff had a limited range of motion in the cervical and lumbar spine, tenderness of the cervical and lumbar spine, muscle spasms in the lumbar spine, an abnormal gait, sensory loss in the right S1 area, reflex changes in the right ankle, muscle weakness in the right leg at S1, trigger points of the cervical spine, positive straight leg raising test on the right to 70 degrees, and insomnia; he cited Plaintiff's MRI's and the EMG testing; he opined that Plaintiff's symptoms were present since 2003. R. 308-09. Dr. Umpierre opined that Plaintiff was able to sit only two hours total and stand/walk two hours total in an eight-hour workday; he would also need to get up and move around every twenty to thirty minutes when sitting and not sit again for 5-10 minutes. R. 310-11.

Even before Plaintiff began seeing Dr. Umpierre, records from the VA indicate that Plaintiff had been seen at the Orlando VA Medical Center complaining of back issues as early as February 2002, with some narrowing in the lumbar L5-S1 interspace. R. 846. By May 2002, it was noted that Plaintiff had been complaining of progressive low back pains for six month and an outside orthopedic evaluation recommended epidurals. The MRI done at that time revealed a compression of the nerve root L4-5 as well as central cord effacement, and the doctor discussed disc treatment options with Plaintiff at great length. R. 840.

At the hearing in May 2009, Plaintiff explained that Dr. Goll (in early 2008), after looking at Plaintiff's MRI's, opined that Plaintiff had additional ruptures in his lower back and he recommended surgery to insert a rod in Plaintiff's back on both sides and screw the vertebrae together for a complete fusion of his lower back. R. 45. Dr. Goll's notes indicate that the cervical/neck surgery from 2007 had gone well[7] but he had not yet performed the proposed surgery on the lumbar spine, which would be a lumbar laminotomy and decompression L4-5 right, L5-S1 right with instrumented interbody

---

[7]Plaintiff testified that the surgery made his neck better at first but some of the problems had returned. R. 57.

fusion L4-5 and L5-S1. R. 702. There was some delay in Plaintiff having the surgery for a lack of funds because, as Plaintiff testified, Dr. Goll would not see him again until he had paid off his portion of the bill from the first surgery of $1,700. R. 48.

As Plaintiff points out, Dr. Umpierre specifically opined that the symptoms and limitations detailed in his questionnaire were present since at least 2003 (R. 313), and his extensive treatment notes for the period were in the administrative record[8] yet the ALJ failed to provide either adequate reasons or any reason for rejecting Plaintiff's treating physicians' opinions, despite statements in the ALJ's decision that the opinions were given "significant weight."

The ALJ's decision, and the AC's decision which adopted the ALJ's opinion on this issue, was not based on substantial evidence and, at a minimum, failed to comply with *Winschel*. The ALJ overlooked most of Dr. Umpierre's treatment notes from the 2003 to 2007 period in her decision (R. 81) and she failed to properly evaluate or weigh these findings – describing them as reporting Plaintiff "seemed fairly stable in late 2004," despite noting in the very same paragraph that Plaintiff had "significant degenerative disc disease" with herniation and "severe" encroachment on the S1 nerve root. R. 81. Under the standard set forth in *Winschel*, this is plain error.

As noted In *Winschel*:

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

\* \* \*

The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a "medical opinion," but this argument ignores the language of the regulations. The treating physician's treatment notes included a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a "statement

---

[8]Dr. Walker also opined that the symptoms and limitations found were present since 2001 (R. 306), although he began treating Plaintiff in August 2005. *See* R. 662.

> [ ] from [a] physician . . . that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winschel's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

*Winschel,* 631 F.3d 1176, 1178-79.

In this case, the ALJ gave only passing reference to Drs. Umpierre and Walkers' treatment notes and opinions for the period pre-2007, even though extensive treatment notes were in the administrative record, including two different lumbar MRI's from August and October 2005 that clearly showed "significant degenerative disc disease" with herniation and "severe" encroachment on the S1 nerve root, and the ALJ reached an incorrect or omitted judgment about the severity of his impairments. Plaintiff was eventually referred to a neurosurgeon, but could not afford the lumbar surgery, in addition to the cervical surgery. The failure of the ALJ to set forth the weight given these findings, and the failure of the AC to correct the error as to the pre-2005 findings warrants remand.

### B.     Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his pain due to his lumbar and cervical spine problems. He argues that the ALJ and the AC erred by finding his symptoms were "generally credible" only for the period after January 17, 2007. R. 82. The Commissioner contends that the ALJ properly considered the factors referenced in the Social Security Regulations[9], and Plaintiff has not shown that the ALJ's reasons were inadequate or unsupported by substantial evidence.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the

---

[9] The factors addressed in SSR 96-7p include: (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. 1996).

objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ did not refer to the Eleventh Circuit's pain standard, but she did determine that Plaintiff had an objective medical condition that could give rise to his alleged symptoms. In discussing Plaintiff's RFC, the ALJ stated:

> For the period beginning January 17, 2007 through February 20, 2008, the claimant's statements concerning the limiting effects of his symptoms are generally credible. However, prior to and after this closed period[10], the record does not support ongoing disability. The preponderance of the evidence prior to the date last insured shows improvement with injections and that the claimant was frequently "doing well" or "doing OK." He would have occasional flare-ups with activity, but the undersigned notes that the claimant was cutting wood and camping in 2005, activities that are not indicative of total disability. He was also able to travel on spring break in 2005. The claimant's subjective complaints are given some weight for this period in regard to the low exertional level assessed, as well as the opportunity for a sit/stand opportunity and limitations to only simple tasks with occasional change which allow for deficits in concentration due to pain and medication side effects. As noted above, the claimant's obesity has also been considered when assessing his functioning.
>
> In summary, the undersigned concludes that the evidence of record does not support disability beginning on or prior to the claimant's date last insured, June 30, 2005, for purposes of entitlement to disability insurance benefits. For the period beginning January 17, 2007, the claimant experienced an exacerbation of his upper extremity symptoms, leading to the need for repeated cervical fusion surgery and an associated period of recuperation.

---

[10]The AC modified the closed period to award Plaintiff ongoing benefits. R. 8-9.

R. 82.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ partially discredited Plaintiff's limitations based on her assessment that Plaintiff was "frequently 'doing well' or 'doing OK' and he would "have occasional flare-ups with activity." Plaintiff argues that his reports of "doing OK" or "doing well" must be taken in context of his severe baseline symptoms. As Plaintiff contends, he consistently stated that engaging in strenuous activities even on a sporadic basis significantly exacerbated his pain. R. 47, 255 ("[A]nytime I do anything beyond that [walking], I get laid up for days on end. . . . If I exert myself to even do walking for any length of time, it becomes unbearable.").

As explained in greater detail *supra*, Plaintiff over the extended period from 2003 to late 2006 was not "doing well" or "OK" – the epidural injections that brought him relief were temporary in nature or did not work at all. The ALJ's statement that Plaintiff was "cutting wood and camping in 2005" is also very misleading, as the two events were completely unconnected and Plaintiff was actually using a table saw which would not necessarily require any lifting, and he was not "cutting wood," *i.e.*, chopping with an axe or saw while camping. R. 508-09. Accordingly, the ALJ's description of Plaintiff as "doing well" as indicative of his general condition prior to 2007 and misleadingly citing certain activities were not findings based on substantial evidence.

## IV.   CONCLUSION

     For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly it is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of the Court be directed to enter judgment and, thereafter, to close the file.

     Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

     Recommended in Orlando, Florida on December 7, 2012.

                                     *David A. Baker*

                                  DAVID A. BAKER
                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy